(47 Misc. Rep. 450.)

### OTIS ELEVATOR CO. v. DUSENBURY et al.

(Supreme Court, Special Term, New York County. June, 1905.)

1. MECHANICS' LIENS—RIGHT TO LIEN—PERFORMANCE OF CONTRACT.

Where a contractor who installed an elevator in a building interpreted the plans furnished him in a reasonable and justifiable manner, and furnished to the owner's architect blue prints as a basis for the work which he proposed to do, and which showed his interpretation of the plans, and the architect retained the blue prints, and made no complaint to the contractor as to the manner in which he was doing the work, the contract would be regarded as substantially performed, and a lien would be enforced in favor of the contractor for the contract price.

2. SAME.

Where an alleged defect in a heating plant installed in a building by a contractor was not in the plant itself, but in the manner of its maintenance by the owner, the contractor was entitled to enforce a lien for the contract price.

3. SAME—EXTRA WORK.

A contractor who installed an extra radiator, which was not called for in the contract, at the owner's instance and request, was entitled to enforce a lien for the value thereof.

Action to establish and foreclose a mechanic's lien by the Otis Elevator Company against Mabel C. Dusenbury and others. Judgment for plaintiff.

Henry L. Brant, for plaintiff.

James A. Seaman, for defendant lienor Hodkinson.

Nathan Ottinger, for defendant Dusenbury, owner.

BISCHOFF, J. The claim of the plaintiff, the Otis Elevator Company, for the balance of the contract price for installing an elevator upon the premises in suit is resisted upon the ground that there was such a defect in the performance of the contract that the lien may not be established upon the basis of substantial performance; the ground of the defense being that the plaintiff wholly departed from the plans furnished with regard to the position of the doors giving entrance to the elevator at the different floors of the building. The contract provided for the installation of an elevator and apparatus of a certain size and with certain details of construction, which contract was sufficiently specific in all matters other than the position of the elevator in the building, and, if deemed important by the parties, the position of the entrance doors in relation to the elevator shaft. So far as to supply omitted details necessary for an understanding of the intention of the parties, the architect's plans, which were furnished to the plaintiff, may probably, as contended by the defendant, be resorted to as illustrative of the agreement, although not specifically referred to by the writing.

Granting this, however, the plans furnished by the architect, and which were in general the plans of the building itself for the purposes of the general work of remodeling, which the owner had undertaken, did not show the position of the doors in their connection with the elevator system to be installed with any degree of certainty, such as would render the plaintiff chargeable with nonperformance of the contract for a failure to provide doors opening in any particular manner. These plans indicated openings upon the elevator shaft so placed that the door when swung to receive freight would open upon a hinge placed to the right hand of one facing the shaft upon the first and sixth floors of the building, while as to the third, fourth, and fifth floors, the plans were so drawn that the doors apparently were to open in the reverse manner, involving also a total lack of uniformity in the position of the single door to be used for the entrance and exit of passengers upon these different floors. It is testified, and is obviously the fact, that an elevator shaft must be so equipped with doors that the doors upon all floors are in the same position in their relation to each other and to the elevator car, and therefore it is impossible to say that the plans, so far as they undertook to show the position of the doors, were sufficiently definite to be controlling upon the question of performance of the contract. Having received the plans, the plaintiff proceeded to construct the car called for, and submitted to the defendant's architect a blue print, showing the plaintiff's understanding of the position of the shaft and the doors, in accordance with which blue print the elevator was actually built and installed. This blue print was retained by the architect, and at no time during the course of the work was any complaint made to the plaintiff that the construction, so far as it related to the position of the doors, was not in accordance with the understanding of the parties. As actually constructed, the doors were made to swing from a hinge at the left, and the contention of the plaintiff is that, particularly upon the first floor of the building, this construction interfered with the convenient loading of the elevator, and that a change, to conform to the architect's plans as to the position of the elevator doors upon the first floor, would involve a complete alteration of the position of the guide posts of the elevator and of the car itself, in view of the form of construction of this car. Hence, it is asserted that there was no substantial performance.

It is true that the plaintiff, when so constructing the elevator that the swing door upon the first floor necessarily was hinged from the left, did depart from the architect's plans as to that particular floor so far as the plans showed the proposed position of the door, but, in view of the necessity for uniformity in the position of all doors opening upon the shaft, and of the fact that the plans as to the majority of other floors shown upon them provided for a reverse method of opening of the doors, it is impossible to say that the plans controlled, because of their total lack of definiteness in their relation to the work covered by the contract. The plaintiff was justified in interpreting the plans as it did, and that its interpretation was sufficiently reasonable is also shown by the fact that the blue print prepared by it as a basis for the actual work done was never objected to when submitted to the defendant's architect for approval.

Under the circumstances, I must hold that there was a substantial performance of the contract as reasonably construed, and while I do not overlook the testimony that one of the agents of the plaintiff had stated to the defendant that a mistake had been made in the drafting department, I do not deem this admission sufficiently strong to establish the fact that, notwithstanding the indefinite character of the architect's plans, some agent of the plaintiff, having authority and control for the purpose of determining the plaintiff's understanding of the contract, had actually construed the plans agreeably to the plaintiff's now asserted intention, and had, notwithstanding, departed from the terms of the contract as thus fully understood. The evidence as to this admission is consistent with the fact that the plaintiff had construed the plans the other way, and had made a "mistake" in its own view of the matter when not following that first interpretation; but since the plans were so indefinite that either interpretation was justified, it cannot be said that the admission of a mistake went to the matter of the actual performance of the contract. The plaintiff, therefore, should have judgment, establishing its lien for the balance of the contract price, as prayed.

The claim of the lienor Hodkinson arises out of a contract for the installation of a steam-heating plant in the building, the items of the claim being $621.17, the balance of the contract price, together with $115 for extra work. It is contended by the owner that there were defects in the steam-heating apparatus, in that there was a lack of uniformity in the distribution of heat as between the radiators in the front of the house and the radiators in the rear, which defects, it is claimed, render the plant useless, and are due to some latent infirmity in the system. Upon the question of fact presented by the evidence as to this, I am inclined to hold that such inequality of distribution of heat as may have been found was due, not to defects in the system, but rather to the manner of its maintenance, and the lienor is therefore entitled to judgment establishing the lien for the balance of the contract price, as upon substantial performance, lessened by the amount of three items of work omitted or not strictly performed, which will be allowed to the owner as deductions as follows: blow-off pipe, $5; check valve, $4; lowering return pipe, $25.

As to the claim for extra work, I do not find that the preponderance of the evidence is with the lienor upon his claim for work in connection with installing the boiler; this work being apparently covered by the contract. But as to the item of $40 for installing an extra radiator, I find that the work so far was extraneous to the contract, and was performed at the request of the owner. This item of $40, therefore, will be allowed.

I find no sufficient ground for holding that there was any deliberate falsification upon this lienor's part for the purpose of enhancing the amount of his lien, as contended by the owner, and judgment is therefore to be rendered in favor of this lienor for the sum of $587.77, the amount due upon the contract, together with $40 for extra work—in all, the sum of $627.77.

Judgment accordingly.